Jorge Alejandro Rojas
Rojas.jorge96@gmail.com
Plaintiff in Pro Se
557 Cambridge Way
Bolingbrook, IL 60440
424-219-1582

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JORGE ALEJANDRO ROJAS,<br>Plaintiff,<br>v.<br>PACIFIC COAST SEAMLESS LLC, et al.,<br>Defendants. | Case No. 8:26-cv-02470-DOC-Ex<br>**NOTICE OF MOTION; MOTION FOR DEFAULT JUDGMENT**<br>Hearing: January 11, 2027, 8:30 AM<br>Judge David O. Carter |

## **NOTICE OF MOTION**

NOTICE IS GIVEN, that Plaintiff, Jorge Alejandro Rojas, will bring on for hearing, before the Honorable David O. Carter, this Motion for Default Judgment, on January 11, 2027 at 8:30 AM, or as soon thereafter as he may be heard, at the U.S. District Court for the Central District of California, 411 W. 4th Street, Courtroom 10A, Santa Ana, California, 92701. The Court may vacate the hearing on a motion for default judgment if no opposition is timely filed.

# TABLE OF CONTENTS

NOTICE OF MOTION ..... 1
MOTION FOR DEFAULT JUDGMENT ..... 7
I. STATEMENT OF FACTS ..... 7
II. ARGUMENT AND AUTHORITIES ..... 8
A. PRELIMINARY FACTORS ..... 8
B. *EITEL* FACTORS ..... 9
1. THE POSSIBILITY OF PREJUDICE TO THE PLAINTIFF ..... 9
2. THE MERITS OF THE SUBSTANTIVE CLAIM AND SUFFICIENCY OF THE COMPLAINT ..... 9
B) DO NOT CALL REGISTRY ..... 15
C) INDIVIDUAL OFFICER LIABILITY ..... 15
D) KNOWINGLY AND/OR WILLFUL ..... 17
3. THE SUM OF MONEY AT STAKE IN THE ACTION ..... 18
4. THE POSSIBILITY OF A DISPUTE CONCERNING THE MATERIAL FACTS ..... 18
5. WHETHER THE DEFAULT WAS DUE TO EXCUSABLE NEGLECT ..... 19
6. THE STRONG POLICY UNDERLYING THE FEDERAL RULES OF CIVIL PROCEDURE FAVORING A DECISION ON THE MERITS ..... 19
III. CONCLUSION ..... 19

# TABLE OF AUTHORITIES

**Cases**

*Alea London Ltd. v. Am. Home Servs.*, 638 F.3d 768 (11th Cir. 2011)............................ 17
*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ........................................................................ 10
*Campbell-Ewald Co. v. Gomez*, 577 U.S. 153 (2016)................................................... 12
*Charvat v. Ryan*, 879 N.E.2d 765 (Ohio 2007)............................................................. 17
*Chesbro v. Best Buy Stores, L.P.*, 705 F.3d 913 (9th Cir. 2012)..................................... 11
*Cunningham v. Enagic USA, Inc.*, Civ. No. 15-00847 (Jan. 16, 2018 M.D. Tenn.) ......... 18
*Cunningham v. Select Student Loan Help, LLC*, Civ. No. 3:15-cv-00554 (M.D. Tenn. July 16, 2018)................................................................................................................ 18
*Danning v. Lavine*, 572 F.2d 1386 (9th Cir. 1978) ........................................................... 9
*Discovery Communications, Inc. v. Animal Planet, Inc.*, 172 F.Supp.2d 1282 (C.D. Cal. 2001)..................................................................................................................... 9
*Doyle v. JTT Funding, Inc.*, 2019 WL 13037025 (C.D. Cal. Dec. 2, 2019) .................... 18
*Eitel v. McCool,* 782 F.2d 1470 (9th Cir. 1986)........................................................9, 18, 19
*Ewing v. Csolar*, 22-cv-0720-WQH-JLB (S.D. Cal. Sep. 22, 2022) ............................... 10
*Facebook, Inc, v. Duguid*, 141 S. Ct. at 1163 (2021)....................................................... 12
*G&G Closed Circuit Events, LLC v. Aguilar*, Case No. 18-cv-0465-JM-BGS, 2018 WL 3656118 (S.D. Cal. Jul. 31, 2018)................................................................................ 18
Grant *v. Capital Mgmt. Servs., L.P.*, 449 Fed. Appx. 598 (9th Cir. 2011)....................... 11
*Howard v. Republican Nat'l Comm.* CA9 No. 23-3826 (Jan. 13, 2026) .......................... 12
*IO Grp., Inc. v. Jordon*, 708 F. Supp. 2d 989 (N.D. Cal. 2010)......................................... 9
*Jackson Five Star Catering, Inc. v. Beason*, 2013 U.S. Dist. LEXIS 159985 (E.D. Mich. Nov. 8, 2013).......................................................................................................... 15, 16
*Joe Hand Promotions, Inc. v. Garcia Pacheco*, Case No. 18-cv-1973-BAS-KSC, 2019 WL 2232957 (S.D.Cal. May 23, 2019) ........................................................................... 18
*Jones v. Royal Admin. Servs.*, 887 F.3d 443 (9th Cir. 2018)........................................... 10
*L.A. Lakers, Inc. v. Fed. Ins. Co.*, 869 F.3d 795 (9th Cir. 2017)..................................... 10

*Maryland v. Universal Elections*, 787 F. Supp. 2d 408 (D. Md. 2011) ............................ 16
*McEwen v. NRA*, No. 2:20-cv-00153-LEW, 2021 WL 1414273 (D. Me. Apr. 14, 2021) 12
*Meyer v. Portfolio Recovery Assocs., LLC*, 707 F.3d 1036 (9th Cir. 2012)..................... 10
*Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368 (2012) ..................................................... 8
*Montanez v. Future Vision Brain Bank, LLC*, No. 20-CV-02959-CMA, 2021 WL 1291182 (D. Colo. Apr. 7, 2021) ................................................................................................ 12
*PepsiCo Inc. v. Cal. Sec. Cans*, 238 F. Supp.2d 1172 (C.D. Cal. 2002)....................... 9, 19
*Philip Morris USA Inc. v. Castworld Products*, Inc., 219 F.R.D. 494 (C.D. Cal. 2003) .... 9
*Reynolds Corp. v. National Operator Services*, Inc., 73 F. Supp. 2d 299 (W.D.N.Y. 1999) ................................................................................................................ 16
*Rinky Dink, Inc. v. Elec. Merch. Sys., Inc.*, 2014 WL 12103245 (W.D. Wash. Nov. 4, 2014) ................................................................................................................ 17
*Robbins v. Coca-Cola-Co.*, No. 13-CV-132-IEG (S.D. Cal. May. 22, 2013).................. 10
*Rogers v. Assurance IQ, LLC*, 2:21-cv-00823-TL (W.D. Wash. Mar. 27, 2023)............ 10
*Rojas v. Bottom Line Concepts*, No. 2:23-CV-02667-AH-KS (ECF. No. 108, Apr. 30, 2025)........................................................................................................................ 16
*Rojas v. Bright World LLC,* No. 2:23-CV-04274-SVW-PVC (ECF. No. 21, Feb. 14, 2024) ................................................................................................. 10, 16, 17, 19
*Satterfield v. Simon & Schuster, Inc*., 569 F.3d 946 (9th Cir. 2009) ......................... 10, 12
*Savanna Grp., Inc. v. Trynex, Inc*., No. 10 C 7995 (N.D. Ill. Sep. 3, 2013) .................... 16
*TeleVideo Sys., Inc. v. Heidenthal, 826 F.2d 915* (9th Cir. 1987) ................................ 9, 10
*Texas v. Am. Blastfax*, 164 F.Supp.2d 892 ........................................................................ 17
*Vogel v. Rite Aid Corp.*, 992 F.Supp.2d 998 (C.D. Cal. 2014) ......................................... 18
*Wecosign, Inc. v. IFG Holdings, Inc.*, 845 F. Supp. 2d 1072 (C.D. Cal. 2012)................ 19
*Williams v. Nat'l Healthcare Review*, No. 2:15-cv-0054-RFB-PAL (D. Nev. Oct. 24, 2017) ............................................................................................................ 11, 12

**Statutes**

28 U.S.C. § 1331 ................................................................................................................ 8

28 U.S.C. § 1920 .......... 19
28 U.S.C. § 1961(a) .......... 19
47 U.S.C. § 217 .......... 16
47 U.S.C. § 227 .......... 7
47 U.S.C. § 227(b) .......... 10, 12
47 U.S.C. § 227(b)(1)(A) .......... 11
47 U.S.C. § 227(b)(1)(A)(iii) .......... 7, 10, 12
47 U.S.C. § 227(b)(3)(C) .......... 7
47 U.S.C. § 227(c) .......... 10, 12
47 U.S.C. § 227(c)(5) .......... 7, 15
47 U.S.C. § 227(c)(5)(C) .......... 7

**Regulations**

47 C.F.R. § 64.1200 .......... 7, 12
47 C.F.R. § 64.1200(a)(2) .......... 11
47 C.F.R. § 64.1200(c) .......... 7
47 C.F.R. § 64.1200(c)(2) .......... 15
47 C.F.R. § 64.1200(f)(1) .......... 11
47 C.F.R. § 64.1200(f)(12) .......... 11
47 C.F.R. § 64.1200(f)(8) .......... 11
47 C.F.R. § 64.1200(f)(8)(i) .......... 12

**Other Authorities**

*In re Joint Petition Filed by DISH Network*, 28 FCC Rcd. 6574, 6588 (¶ 37) (2013) .......... 14
*In re Rules & Regulations Implementing the TCPA*, 10 FCC Rcd. 12391, 12397 (1995) 14
*In The Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C. Rcd. 1830 (2012) .......... 11
*Intercambio, Inc.*, 3 FCC Rcd. 7247 (1988), 1988 WL 486783 .......... 17

**Rules**

C.D. Cal. L.R. 55-1 .......... 8
C.D. Cal. L.R. 7-3 .......... 7
Fed. R. Civ. P. 55 .......... 7, 8

# MOTION FOR DEFAULT JUDGMENT

Plaintiff, pursuant to Fed. R. Civ. P. 55(b)(2), moves this Court for a default judgment against Defendants Alicia Raye Degrazio ("Mrs. Degrazio”), Pacific Coast Seamless LLC (“PCS LLC”), and Garrett J. Degrazio (“Mr. Degrazio”).

This motion would not be dispositive of the entire case because there are additional Defendants and is filed as to these Defendants only in compliance with this Court’s November 17, 2026 Order (Dkt. 20) as to Mrs. Degrazio. Plaintiff believes that to prevent inconsistent judgments in this action, the Court should rule on all the defendants at once.

**L.R. 7-3 Conferral Statement.** Plaintiff mailed a conferral letter to Defendant Mrs. Degrazio’s last known address on November 18, 2026. Exhibit 1 (Dec’l of J. Rojas, “PD”) ¶ 3. Plaintiff has not received a reply. Plaintiff has also attempted to contact the Defendants via e-mail concerning this action and has not received a reply – concerning matters such as scheduling the joint 26(f) planning meeting. Plaintiff spoke with Mr. Seidel on or about November 11, 2026, who indicated that Defendants would retain counsel, but Plaintiff has thus far not heard from counsel for any Defendant. PD ¶ 3.

## I. Statement of Facts

This is an action under the Telephone Consumer Protection Act (“TCPA”), 47 U.S.C. § 227 and its regulations, 47 C.F.R. § 64.1200. Plaintiff received at least two (2) text messages from Defendants without consent, using an Automatic Telephone Dialing System (“ATDS”) (AC[1] ¶¶ 55-59) and notwithstanding Plaintiff is on the National Do Not Call Registry (AC ¶ 35).

Violations are set by statute at $500 per violation, which can be up to trebled under 47 U.S.C. § 227(b)(3)(C) and 47 U.S.C. § 227(c)(5)(C) if the conduct is knowing and/or willful. Two texts were sent using an ATDS to a cellular telephone number in violation of 47 U.S.C. § 227(b)(1)(A)(iii). Two texts were sent to a cellular telephone number listed on the Do Not Call Registry in violation of 47 U.S.C. § 227(c)(5) and 47 C.F.R. § 64.1200(c).

[1] “AC” refers to the Amended Complaint, filed October 28, 2026. Dkt. 16.

Plaintiff is entitled to a minimum of $2,000.00 in damages jointly and severally[2] prior to trebling and up to $6,000.00 jointly and severally after trebling.

## II. Argument and Authorities

### A. Preliminary Factors

Pursuant to L.R. 55-1, Exhibit 1 is a declaration in compliance with Fed. R. Civ. P. 55(b)(2). Plaintiff is unaware of any Defendant being subject to the Servicemembers Civil Relief Act, being a minor, incompetent, or incarcerated. PD ¶¶ 4-7.

Jurisdiction: This Court has federal-question subject matter jurisdiction over the Plaintiff's claims pursuant to 28 U.S.C. § 1331 as the TCPA is a federal statute. *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 372 (2012).

Defendants are at home in this district. Defendant Mrs. Degrazio is domiciled and was served at 15471 Salisbury Lane, Huntington Beach, CA 92647 (Dkt. 12). Defendant also lists this same address in their Answer. Dkt. 13. Defendant Mr. Degrazio is domiciled and was served at 15471 Salisbury Lane, Huntington Beach, CA 92647 (Dkt. 22). Defendant PCS LLC is a California entity.

Service: Defendants were properly served. Mrs. Degrazio's co-resident (Mr. Degrazio) was served by a process server (Dkt. 12). When the Amended Complaint was filed, a copy was mailed via USPS First Class Mail to Mrs. Degrazio's last known address. Default was entered November 17, 2026. Dkt. 19. PCS LLC was served with a copy of the Amended Complaint and the Summons on the Amended Complaint by a process server, via service on Mrs. Degrazio (agent for service) on October 31, 2026. Dkt. 21. Default was entered November 24, 2026. Dkt. 27. Mr. Degrazio was personally served at his home residence on October 31, 2026. Dkt. 22. Default was entered November 24, 2026. Dkt. 28.

---

[2] References to joint and several judgment are because Plaintiff intends to request a joint and several judgment as to all Defendants, notwithstanding that this motion is only filed as the three defendants who has thus far defaulted.

### B. *Eitel* Factors

The Ninth Circuit has set forth seven balancing factors, known as the *Eitel* factors, that a court should consider when evaluating a motion for default judgment:

> (1) the possibility of prejudice to plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action, (5) the possibility of a dispute concerning the material facts, (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Eitel v. McCool,* 782 F.2d 1470, 1471-72 (9th Cir. 1986).

#### 1. The Possibility of Prejudice to the Plaintiff

The "Court must examine whether Plaintiff will be prejudiced if the Court denies its request for entry of default judgment." *IO Grp., Inc. v. Jordon*, 708 F. Supp. 2d 989, 997 (N.D. Cal. 2010) (citing *Eitel*, 782 F.2d at 1471-72). If default judgment were not entered, Plaintiff "will likely be without other course for recovery." *PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F.Supp.2d 1172, 1177 (C.D. Cal. 2002). Therefore, the first Eitel factor weighs in favor of granting default judgment.

#### 2. The Merits of the Substantive Claim and Sufficiency of the Complaint

A party seeking a default judgment must state a claim upon which it may recover. *PepsiCo Inc. v. Cal. Sec. Cans*, 238 F. Supp.2d 1172 (C.D. Cal. 2002). After a default has been entered by the court clerk, the well-pleaded factual allegations of the complaint are taken as true, except for those allegations relating to damages. *TeleVideo Sys., Inc. v. Heidenthal, 826 F.2d 915, 917* (9th Cir.1987); *Discovery Communications, Inc. v. Animal Planet, Inc*., 172 F.Supp.2d 1282, 1288 (C.D. Cal. 2001). *Philip Morris USA Inc. v. Castworld Products*, Inc., 219 F.R.D. 494, 498 (C.D. Cal. 2003).

The second and third *Eitel* factors "require that a plaintiff state a claim on which the [plaintiff] may recover." *PepsiCo*, 238 F. Supp. 2d at 1175 (alteration in original); see also *Danning v. Lavine*, 572 F.2d 1386, 1388 (9th Cir. 1978). A complaint satisfies this test

when the claims "cross the line from conceivable to plausible." *Ashcroft v. Iqbal*, 556 U.S. 662, 680 (2009). The Court may treat as true those allegations in the complaint except those relating to damages. *TeleVideo*, 826 F.2d at 917-18. In the pre-discovery phase, general allegations in a TCPA case are sufficient. *Robbins v. Coca-Cola-Co.,* No. 13-CV-132-IEG (S.D. Cal. May. 22, 2013). Here, Plaintiff has alleged and supported his TCPA claims with more than adequate specificity – he has identified the date, time, and call information, and sufficiently connected each call to Defendants.

"Courts considering the issue have allowed separate recoveries when the same call results in violations of both § 227(b) and § 227(c)" *Ewing v. Csolar*, 22-cv-0720-WQH-JLB, at *9 (S.D. Cal. Sep. 22, 2022) (collecting cases). This District has also followed this. *Rojas v. Bright World LLC,* No. 2:23-CV-04274-SVW-PVC (ECF. No. 21, Feb. 14, 2024).

**a) Pre-Recorded Voice and/or ATDS**

The TCPA prohibits the (1) use of a pre-recorded voice in telemarketing calls to residential phones without prior express consent of the called party, 47 U.S.C. § 227(b), and (2) telemarketing calls to residential telephone subscribers on the DNC list, 47 U.S.C. § 227(c); *Jones v. Royal Admin. Servs.*, 887 F.3d 443, 448 (9th Cir. 2018). The elements of a claim with respect to an ATDS are: (1) the defendant called a telephone number assigned to a cellular telephone service; (2) using an automatic telephone dialing system; (3) without the recipient's prior express consent." *L.A. Lakers, Inc. v. Fed. Ins. Co.*, 869 F.3d 795, 803-04 (9th Cir. 2017); *see also* 47 U.S.C. § 227(b)(1)(A)(iii).

To plead a claim under section 227(b), Plaintiff must allege the following elements: (1) a defendant called their cellular or residential phone numbers, (2) using an artificial or pre-recorded voice, (3) without their prior express consent. *See Meyer v. Portfolio Recovery Assocs., LLC*, 707 F.3d 1036, 1043 (9th Cir. 2012). *Rogers v. Assurance IQ, LLC*, 2:21-cv-00823-TL, at *6 (W.D. Wash. Mar. 27, 2023).

"Prior express consent" under the TCPA must be "clearly and unmistakably stated." *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 955 (9th Cir. 2009). "Calls otherwise in violation of the TCPA are not unlawful if made 'for emergency purposes or made with

the prior express consent of the called party,' 47 U.S.C. § 227(b)(1)(A); however, 'express consent' is not an element of a TCPA plaintiff's prima facie case, but rather is an affirmative defense for which the defendant bears the burden of proof." *Grant v. Capital Mgmt. Servs., L.P.*, 449 Fed. Appx. 598, 600 n.1 (9th Cir. 2011) (unpublished disposition). There are two consent standards: 1) prior express written consent and 2) prior express consent. The difference between the two depends on whether the call was a telemarketing call. *Williams v. Nat'l Healthcare Review*, No. 2:15-cv-0054-RFB-PAL, at *7 (D. Nev. Oct. 24, 2017).

Since 2012, prior express written consent of the recipient is required for all telemarketing and advertisement calls. 47 CFR 64.1200(a)(2). *In The Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, the FCC held that "we revise our rules to require prior express written consent for all autodialed or prerecorded telemarketing calls to wireless numbers and residential lines . . ." 27 F.C.C. Rcd. 1830, 1831 (2012). *Williams,* at *7 (D. Nev. Oct. 24, 2017)

Telemarketing means the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person. *Chesbro v. Best Buy Stores, L.P.*, 705 F.3d 913, 918 (9th Cir. 2012) (citing 47 C.F.R. § 64.1200(f)(12) (2013)). "[A]pplication of the prerecorded message rule should turn, not on the caller's characterization of the call, but on the purpose of the message." *Chesbro*, 705 F.3d at 918 (9th Cir. 2012). The TCPA defines "advertisement" as follows: "The term advertisement means any material advertising the commercial availability or quality of any property, goods, or services." 47 C.F.R. § 64.1200(f)(1).

"The term prior express written consent means an agreement, in writing, bearing the signature of the person called that clearly authorizes the seller to deliver or cause to be delivered to the person called advertisements or telemarketing messages using an automatic telephone dialing system or an artificial or prerecorded voice, and the telephone number to which the signatory authorizes such advertisements or telemarketing messages to be delivered." 47 C.F.R. § 64.1200(f)(8). Additional requirements for what the written

agreement shall include are in the regulations. 47 C.F.R. § 64.1200(f)(8)(i) (2013). *Williams,* at *9 (D. Nev. Oct. 24, 2017). Here, there was no agreement. PD ¶ 12.

"A text message to a cellular telephone, it is undisputed, qualifies as a 'call' within the compass of § 227(b)(1)(A)(iii)". *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 156 (2016). *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 954 (9th Cir. 2009); *Howard v. Republican Nat'l Comm.* CA9 No. 23-3826 at 12 (Jan. 13, 2026).

To allege that an ATDS was used, Plaintiff must plead that the system had the capacity "either to store a telephone number using a random or sequential number generator, or to produce a telephone number using a random or sequential number generator." *Facebook, Inc v. Duguid*, 141 S. Ct. 1163 (2021). After *Facebook*, at least two district courts have evaluated ATDS allegations at the pleading staged based on plausible inferences which suggest that a random or sequential number generator was used to make the calls, such as use of random caller ID numbers, prerecorded messages, and failures to honor do-not-call requests. *See, e.g., Montanez v. Future Vision Brain Bank, LLC*, No. 20-CV-02959-CMA, 2021 WL 1291182, at *7 (D. Colo. Apr. 7, 2021); *McEwen v. NRA*, No. 2:20-cv-00153-LEW, 2021 WL 1414273, at *7 (D. Me. Apr. 14, 2021).

The texts in this action were made to solicit gutter replacement services. AC ¶¶ 3, 61, 81. Plaintiff alleges that the texts were all made by, for, or on behalf of Defendants. AC ¶¶ 80-81. Because the texts were sent using an ATDS, they are in violation of 47 U.S.C. § 227(b). Such calls required prior express written consent. Because several text messages were sent, for solicitation purposes, while Plaintiff's number was on the do not call registry, they also were made in violation of 47 U.S.C. § 227(c) and 47 C.F.R. § 64.1200. Such calls would have required consent or inquiry, which were not present here either.

The calls were made to cellular residential telephone number, the 1582 Line. AC ¶ 33; PD ¶ 9. This line is paid by Plaintiff, are not associated with a business, and only used by Plaintiff. AC ¶ 34; PD ¶ 9. Plaintiff received the first text on July 8, 2026. AC ¶ 55; PD ¶ 10. The text was "Hey Delfin, it's Cindy with CA Gutter Group. We're in Torrance this week offering free gutter checks & estimates. Interested in a free estimate?" Plaintiff did

not reply to the message. AC ¶ 57; PD ¶ 10. Subsequently, on August 28, 2026, a second text was received, "Hey Delfin, it's Sarah. We're a local gutter pro here in CA. We're offering FREE gutter replacement estimates in Torrance. Would you like one?" AC ¶ 58; PD ¶ 11; Exhibit 2 (Text Message Screenshots).

After text 2, Plaintiff engaged the caller to obtain more information regarding the services being offered and to identify the identity of the caller. AC ¶ 60; PD ¶ 12. Plaintiff was texting an artificial intelligence system, given the short response times between the messages. AC ¶ 62; PD ¶ 12. Plaintiff asked for information concerning who was texting, and was not provided one, and had to schedule an appointment. AC ¶ 63; PD ¶ 12. Plaintiff was ultimately provided a call back number of 949-209-7765 – a Google Search which reveals is an alcohol and rehab facility owned by Defendant Mr. Seidel. AC ¶ 64; PD ¶ 12. Plaintiff placed an outbound call to that number, and was connected to an individual who stated they were "Pacific Coast Seamless", and provided a website of pacificcoastseamless.com. AC ¶ 65; PD ¶ 13. Defendant Mrs. Degrazio also subsequently called Plaintiff, from a number bearing the Pacific Coast Seamless caller ID. AC ¶ 66; PD ¶ 13. During the telephone call with Mrs. Degrazio, she admitted that the texts between Plaintiff and the 714 number that texted him were likely Artificial Intelligence. AC ¶ 67; PD ¶ 13.

Both texts were sent from the same number. AC ¶¶ 55, 58. Both were soliciting the sale of a service that would replace gutters on a home. Notably, "Delfin" has never utilized the phone number ending in 1582. PD ¶ 15. Plaintiff has also not resided within this district for over 12 years. PD ¶ 16. The texts were also likely sent using artificial intelligence, given the very short response times. Plaintiff alleges these facts are further indication of the use of an ATDS.

The parties also had no prior business relationship (AC ¶ 82; PD ¶ 17), and the circumstantial indicia of the calls support the inference that an ATDS was used. More detailed information about a dialing system is not required at the pleadings stage.

The FCC has explained that its "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *See In re Rules & Regulations Implementing the TCPA*, 10 FCC Rcd. 12391, 12397 (1995). On May 9, 2013, the FCC determined that it was not a basis for avoiding liability within a Declaratory Ruling that held that sellers may not avoid liability by outsourcing telemarketing:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside of the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain relief. As the FTC noted, because "[s]ellers may have thousands of "independent" marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy.

*In re Joint Petition Filed by DISH Network*, 28 FCC Rcd. 6574, 6588 (¶ 37) (2013) ("May 2013 FCC Ruling") (internal citations omitted).

Similarly, here, Defendants cannot allege that another entity is making the calls on its behalf as a defense. Plaintiff alleges that the calls were made for the benefit of the Defendants. The calls were made with the name "Pacific Coast Seamless" and that is who has been sued in this action. Plaintiff alleges PCS LLC and the separate corporate entity, RG Systems LLC, doing business as Pacific Coast Seamless, are essentially the same entity. Mrs. Degrazio, as officer of PCS LLC, is also an employee of RG Systems LLC, based on telephone conversations Plaintiff has had with her. AC ¶ 75; PD ¶ 18. The Pacific

Coast Seamless website has a footer that says "RG Systems LLC." Exhibit 3 (PacificCoastSeamless.com website). Mrs. Degrazio participates in the telemarketing conduct by obtaining the leads, making follow up calls, etc. AC ¶ 79. Mrs. Degrazio also formed PCS LLC. PD ¶ 18. The domain name for pacificcoastseamless.com was created on or about December 30, 2024. AC ¶ 74; Exhibit 4 (WHOIS Registration Information). PCS LLC was incorporated on or about May 26, 2025 (AC ¶ 72), which is earlier than when RG Systems LLC was incorporated on or about July 25, 2025 (AC ¶ 73).

Plaintiff alleges defendants profited from the calls, because without those calls, they would have fewer customers and leads. The calls were made for "free estimates" but they were for the purpose of soliciting actual services and products that would be paid for.

**b) Do Not Call Registry**

The elements of the National Do Not Call Registry claim are: (1) the defendant called a residential telephone number; (2) registered on the National Do Not Call Registry; (3) at least twice in any 12-month period; (4) for initiating any telephone solicitation. 47 C.F.R. § 64.1200(c)(2); 47 U.S.C. § 227(c)(5).

Plaintiff's phone has been registered on the Registry since January 18, 2008 (AC ¶ 35; PD ¶ 19; Exhibit 5, 1582 Line DNC Registration), making all of the calls made to it a violation, as more than one call was made, and the calls were for the purpose of telephone solicitation to a residential telephone number. Plaintiff registered his phone numbers on the Do Not Call list to obtain solitude from invasive and harassing telemarketing calls which prevented Plaintiff from using his phone for legitimate purposes. AC ¶ 45; PD ¶ 20.

**c) Individual Officer Liability**

Plaintiff sues the individual officers of the respective corporate entities. As an officer of their respective companies, they are responsible for its operations. *See, e.g., Jackson Five Star Catering, Inc. v. Beason*, 2013 U.S. Dist. LEXIS 159985, *10 (E.D. Mich. Nov. 8, 2013) ("[M]any courts have held that corporate actors can be individually liable for violating the TCPA "where they 'had direct, personal participation in or personally authorized the conduct found to have violated the statute.'").

The TCPA is part of the Communications Act of 1934, and the Communications Act contains a *respondeat superior* provision. *See* 47 U.S.C. § 217 ("[T]he act, omission, or failure of any officer, agent, or other person acting for or employed by any common carrier or user, acting within the scope of his employment, shall in every case be also deemed to be the act, omission, or failure of such carrier or user *as well as that of the person*.") (emphasis added). This provision applies when "construing and enforcing the provisions of the Communications Act," of which the TCPA is a part. *Reynolds Corp. v. National Operator Services*, Inc., 73 F. Supp. 2d 299, 305 (W.D.N.Y. 1999).

These individuals were clearly acting "within the scope of their employment" when they orchestrated the placing of calls to Plaintiff. Specifically, they selected the phone numbers (or regions/markets) that would be called, chose the telemarketing equipment that would be used, and personally authorized the telemarketing conduct of their companies. AC ¶¶ 29, 30, 77, 86. In TCPA cases, courts have upheld personal liability against individuals. *Rojas v. Bright World LLC,* No. 2:23-CV-04274-SVW-PVC (ECF. No. 21, Feb. 14, 2024)*; Rojas v. Bottom Line Concepts*, No. 2:23-CV-02667-AH-KS (ECF. No. 108, Apr. 30, 2025); *See Jackson's Five Star Catering, Inc. v. Beason*. (Granting plaintiff's motion for summary judgement where the record contained no dispute that the individual corporate officer participated in the payment of and authorization for the fax ads). Indeed, "If an individual acting on behalf of a corporation could avoid individual liability, the TCPA would lose much of its force." *Maryland v. Universal Elections*, 787 F. Supp. 2d 408, 416 (D. Md. 2011). *See Texas v. Am. Blastfax*, 164 F.Supp.2d 892, 898 (noting the corporate officers were "the two persons who controlled all of Blastfax's day-to-day operations" and had "direct, personal involvement in and ultimate control over every aspect of Blastfax's wrongful conduct");" *Savanna Grp., Inc. v. Trynex, Inc.*, No. 10 C 7995, at *14 n.5 (N.D. Ill. Sep. 3, 2013).

Individual officers of an entity violating the TCPA can be personally liable for their direct participation if they "had direct, personal participation in or personally authorized the conduct found to have violated the statute." *Rinky Dink, Inc. v. Elec. Merch. Sys., Inc.*,

2014 WL 12103245, at *6 (W. D. Wash. Nov. 4, 2014) (citations omitted). The Amended Complaint sufficiently alleges the direct participation of the individual officers in the TCPA violations. AC ¶ 30, 32, 70, 79, 86. This includes for example the statement from Mr. Seidel that the company purchased leads from a third party. PD ¶ 21. Whether those leads were "certified" or not does not change Plaintiff's prima facie case – and it is Defendant's burden to demonstrate prior express consent to call Plaintiff.

**d) Knowingly and/or Willful**

Courts routinely award treble damages in cases arising from defaults. Intent to violate is not required for treble damages. *Alea London Ltd. v. Am. Home Servs*., 638 F.3d 768, 776 (11th Cir. 2011). If the Defendant knows the facts underlying the offense, it can be held liable for treble damages—ignorance of the law is no excuse. *Charvat v. Ryan*, 879 N.E.2d 765, 767 (Ohio 2007). "The Federal Communications Commission has interpreted 'willful or knowing' under the Telecommunications Act (of which the TCPA is a part), as not requiring bad faith, but only that the person have reason to know, or should have known, that his conduct would violate the statute." *Texas v. Am. Blastfax*, 164 F.Supp.2d at 899 (citing *Intercambio*, *Inc*., 3 FCC Rcd. 7247 (1988), 1988 WL 486783).

Defendants used fake names in the course of the calls, such as "CA Gutter Group" or saying they are "a local gutter pro." AC ¶¶ 56, 59. Neither of these are defendants real names. Plaintiff had to schedule an appointment to find out who Defendants were. Exhibit 2. Defendants went out of their way to not provide Plaintiff with the information about who they were in the texts – because they knew their conduct wasn't lawful. A company that believes it is compliant with the texts it is sending would proudly say who they are.

"Courts in this Circuit have typically exercised their discretion to award treble damages in cases where the defendant had a prior judgment against it for violating the TCPA or where statutory damages were trivial and thus would deter the defendant from future misconduct." *Rojas v. Bright World LLC,* No. 2:23-CV-04274-SVW-PVC (ECF. No. 21, Feb. 14, 2024).

The facts also demonstrate that Defendants would not be deterred by just statutory damages – given their failure to identify, lack of care for where they obtain leads from, and in general the relatively small nature of plain statutory damages in this case. The Court should exercise its discretion and treble the statutory damages.

**3. The Sum of Money at Stake in the Action**

Under the fourth factor, a court considers that "Default judgment is disfavored where the sum of money at stake is too large or unreasonable in relation to defendant's conduct." *Vogel v. Rite Aid Corp.,* 992 F.Supp.2d 998, 1012 (C.D. Cal. 2014). "[T]he sum of money at stake in [a TCPA] action is particularly appropriate for resolution on default judgment because TCPA damages are specifically set by statute." *Auth. Tax Servs*., at *7. "A single call can violate both §§ 227(b) and (c) and support damages claims for both." *Doyle v. JTT Funding, Inc*., 2019 WL 13037025, at *11 (C.D. Cal. Dec. 2, 2019).

Courts around the country have granted six and even seven-figure default judgments in TCPA cases. *See e.g., Cunningham v. Select Student Loan Help, LLC*, Civ. No. 3:15-cv-00554, at *1 (M.D. Tenn. July 16, 2018) ($249,000); *Cunningham v. Enagic USA, Inc*., Civ. No. 15-00847, at *1-2 (Jan. 16, 2018 M.D. Tenn.), Dkt. 274 ($259,500). The amount sought here is significantly lower than these figures, even with trebling.

**4. The Possibility of a Dispute Concerning the Material Facts**

Defendants' failure to appear leaves the Court with an absence of any facts—let alone material facts—in dispute. Courts routinely find that no factual dispute exists, and that therefore, this *Eitel* factor weighs in favor of granting default judgment. *See, e.g., Joe Hand Promotions, Inc. v. Garcia Pacheco*, Case No. 18-cv-1973-BAS-KSC, 2019 WL 2232957, at *4 (S.D.Cal. May 23, 2019); *G&G Closed Circuit Events, LLC v. Aguilar*, Case No. 18-cv-0465-JM-BGS, 2018 WL 3656118, at *2 (S.D. Cal. Jul. 31, 2018).

Additionally, on October 19, 2026, Defendant Mr. Seidel contacted Plaintiff, and admitted that Pacific Coast Seamless purchased leads from a third party and that calls were then placed. AC ¶ 70; PD ¶ 21.

**5. Whether the Default was due to Excusable Neglect**

The Court must determine whether the Defendants' default is a product of excusable neglect. *Eitel*, 782 F.2d at 1472. This factor favors the entry of default judgment where Plaintiff demonstrates that Defendants have been properly served and are thus aware of the pending action. *Rojas v. Bright World LLC,* No. 2:23-CV-04274-SVW-PVC (ECF. No. 21, Feb. 14, 2024), citing *Wecosign, Inc. v. IFG Holdings, Inc.,* 845 F. Supp. 2d 1072, 1082 (C.D. Cal 2012).

Default here is not due to excusable neglect. Defendants were on notice and failed to respond. Defendants have not made any good faith showing of an attempt to participate in this litigation. Despite Mrs. Degrazio's earlier answer, Mrs. Degrazio has made no attempt to cooperate in the litigation of this action – including for example ignoring Plaintiff's requests (in writing and orally) regarding scheduling a 26(f) conferral call. PD ¶ 3.

**6. The Strong Policy Underlying the Federal Rules of Civil Procedure Favoring a Decision on the Merits**

The policy favoring resolution of a case on the merits always weighs against default judgment. However, the other factors outweigh this policy because Defendant's "failure to answer Plaintiff's SAC makes decision on the merits impractical, if not impossible." *PepsiCo*, 238 F. Supp. 2d at 1177.

**III. Conclusion**

Plaintiff requests that judgment be entered against Defendants, jointly and severally, in the amount of $6,000.00. Interest is requested pursuant to 28 U.S.C. § 1961(a). Plaintiff does not seek attorney's fees, but will seek costs allowed under 28 U.S.C. § 1920 following disposal of this motion, consistent with applicable local rules.

Respectfully submitted,

Dated: November 24, 2026

/s/ *Jorge Alejandro Rojas*
JORGE ALEJANDRO ROJAS
Rojas.jorge96@gmail.com
Plaintiff in Pro Se
557 Cambridge Way
Bolingbrook, IL 60440
(424) 219-1582

**STANDING ORDER LENGTH CERTIFICATE OF COMPLIANCE**

The undersigned, Plaintiff Jorge Alejandro Rojas, certifies that the motion, excluding the notice, table of contents, and table of authorities, contains 4,611 words, which complies with the word limit of L.R. 11-6.1, and is also less than 25 pages in length, which complies with the Court's Standing Order.

Dated: November 24, 2026

/s/ *Jorge Alejandro Rojas*
JORGE ALEJANDRO ROJAS

**CERTIFICATE OF SERVICE**

Plaintiff will mail a copy of this filing to each Defendants last known address via USPS First Class Mail.

/s/ *Jorge Alejandro Rojas*
JORGE ALEJANDRO ROJAS